**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Vernon McQUINN,
Defendant–Appellant.**

**No. 54266.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 25, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 7, 1988.

Application to Transfer Denied
Jan. 17, 1989.

Herman L. Jimerson, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Fracke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Presiding Judge.

Defendant, Vernon McQuinn, appeals from his conviction, after a jury trial, of carrying a concealed weapon. Section 571.030.1(1), RSMo (1986). He was sentenced as a prior and persistent offender to imprisonment for seven years. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence showed that, at 10:50 p.m. on January 6, 1987, two police officers riding in a patrol car observed defendant looking into the front windows of a closed service station. The officers knew that the service station had been burglarized numerous times. The officers stopped their vehicle and approached defendant.

The officers noticed that defendant was clutching a thin leather briefcase under his arm. The case was unzipped. One police officer asked defendant what was in the bag. Defendant responded, "Nothing."

The officer then felt the bottom of defendant's case and felt what he thought was the outline of a large handgun. He grabbed the briefcase away from defendant and retrieved a fully-loaded .357 magnum revolver from inside.

Defendant did not testify at trial and presented no evidence in his defense.

In his first point, defendant alleges that the trial court erred in finding that no prima facie case of racial discrimination was made when the State used all of its peremptory challenges to exclude black veniremen and gave no reasons for its strikes in contravention of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The record in this case indicates that defense counsel stated: "I believe I've established a prima facie case for Batson.... [that] [s]trikes were based on race...." The trial court took judicial notice that defendant was black. The court noted that, of the 36 jurors summoned for the venire, 17 were black. Of the 26 veniremen from which the jury and one alternate could be selected, 15 were black. The panel was ultimately composed of eight black jurors and one black alternate. The trial court found that, because of the racial composition of the jury, defendant had not established a prima facie case of insidious discrimination. Defense counsel did not specify why the State's strikes raised the inference of discrimination on the basis of race.

A defendant establishes a prima facie case of discrimination by showing (1) that defendant is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987) (citing *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723). The ultimate burden of persuasion lies with, and never shifts from, defendant. *Antwine*, 743 S.W.2d at 63.

To make a prima facie case of purposeful discrimination in the present case, defendant should have done more at trial than simply demonstrate that the State struck blacks from the jury panel. He should have shown that this fact, along with other relevant circumstances, raised the inference that the State excluded prospective jurors on the basis of race.

Here, the majority of the jurors were black. This was a criminal trial which required a unanimous verdict. Defendant was actually tried and convicted before a jury composed of a greater percentage of blacks than were on the jury panel. *See State v. Brown*, 752 S.W.2d 382, 385 (Mo. App.1988). Defendant did not show that the State's use of its peremptory challenges to exclude six of 15 black veniremen raised the inference of racial discrimination. The trial court did not err in determining that defendant failed to make a prima facie case of discrimination. Defendant's failure to meet the requirement to make a prima facie case of racial discrimination in jury selection relieves the State of the attendant requirement to justify its jury selection process. Defendant's first point is denied.

In his second point, defendant claims that the trial court erred in denying his motion to suppress the admission into evidence of the gun which was seized in a warrantless search which occurred when he was stopped by the police officers.

In reviewing the trial court's ruling on the motion to suppress, the appellate court is free to disregard contrary evidence and inferences, and is to affirm the trial court's ruling if the evidence is sufficient to sustain its findings. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. denied*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987).

Under *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–1879, 20 L.Ed.2d 889 (1968), a police officer may make a brief stop of a person based upon a reasonable suspicion that such a person presents a danger to himself or to others. During that stop, the officer may make a brief pat down for weapons. In determining wheth-

er the warrantless search violated defendant's constitutional rights, the inquiry is two fold: whether the officer's action was justified at its inception; and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id; State v. Holt,* 660 S.W.2d 735, 737 (Mo.App.1983).

In the present case, the police officers stopped defendant because he was looking into the window of a business establishment which was closed. It was late at night. The officers were aware that the business had been burglarized numerous times. The initial stop of defendant was not unreasonable in light of the facts and circumstances presented to the officers at the time.

We next consider whether the search of the briefcase fell within the limits permitted by *Terry*. The sole rationale for a *Terry* search "is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officers." *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884. Such an intrusion also includes the area within the immediate control of the person frisked. *Holt,* 660 S.W.2d at 737.

Here, defendant was clutching a bag under his arm. The case was unzipped. Given that the *Terry* stop of defendant was justified, the officer had a right to determine what, if anything, defendant had in the briefcase. Moreover, it would have been naive on the part of the officers to not check out the contents of the case which was open and easily accessible to defendant. Defendant's second point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.